UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

---------------------------------------------------------------x
(1) SONDIA BELL,

                      Plaintiff,      :      4:21-cv-00061-JED-CDL

   -against-                           :      **COMPLAINT**

(1) CITY OF TULSA,              :      PLAINTIFF DEMANDS A
                                            :      TRIAL BY JURY
                      Defendant.     :
---------------------------------------------------------------x

Plaintiff, Sondia Bell, by and through her undersigned attorney, alleges for her Complaint as follows:

## **PARTIES**

1. Ms. Sondia Bell ("**Plaintiff**" or "**Bell**") is a natural person residing in Tulsa, Oklahoma.

2. Upon information and belief, City of Tulsa, ("**Defendant**" or "**City of Tulsa**"), is a duly enacted municipality regularly doing business and employing individuals throughout the City of Tulsa.

3. Upon information and belief, the City of Tulsa employs more than five-hundred and one (501+) employees, and was, and is, regularly doing business in and throughout Tulsa, Oklahoma.

## **JURISDICTION AND VENUE**

4. Jurisdiction is founded upon 28 U.S.C. § 1331.

5. The EEOC issued a *Notice of Right to Sue* letter (EEOC Charge No. #564-2020-01905) dated November 18, 2020 that provided a ninety (90) day window to file suit, and Bell's Title VII claims are therefore timely.

1

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1) because the Defendant resides in the Northern District of Oklahoma, has substantial contacts and business dealings within and throughout Tulsa, and because a substantial portion of the events giving rise to this action took place at Defendant's Tulsa facility.

7. Plaintiff, *respectfully*, demands a trial by jury on all issues and claims to the extent permissible under the law.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

8. Bell was employed by City of Tulsa as a Contract Administrator until her wrongful and retaliatory termination in 2020.

9. Bell belongs to the racial minority group of, and self-identifies as, African-American.

10. Bell is an employee who engaged in Title VII, ADA, and Section 1981 'protected activity' and belongs to the protected class of employees who advocate for employment rights ("**Retaliation**").

11. Bell is an employee who belongs to the protected class of an individual associated as a caregiver to her child who has special needs ("**Disability Association**")

12. At all pertinent times Bell was fit, qualified, and eager to hold a position at the City of Tulsa, and she performed her duties in a professional and competent manner.

13. Upon information and belief, at all pertinent times, Defendant acted or failed to act by and through its duly authorized agents, servants, representatives, partners, manager, supervisors and employees, who conducted themselves within the scope and course of their employment, with intentional malice and/or with reckless disregard to Bell's federal statutory rights.

14. In or around 2020, Bell requested a work-from-home situation.

15. Bell's Chief Information Officer, Michael (last name presently unknown) heard of her request, and remarked that she could perform her contract drafting and review duties from home, and that her request to work-from-home was a "great idea."

16. Bell's immediate supervisor Manager Christopher Berg, however, rejected Bell's request.

17. When Bell inquired why Manager Berg rejected her request, Berg responded, in substantial form: "because I know you have children, and one is disabled, and you'll take care of him if you are at home, and that will distract you from your work."

18. Bell was shocked at this discriminatory, dismissive, and prejudicial justification that was not based in any fact whatsoever, and continued to press Manager Berg, noting that other similarly situated City of Tulsa employees—who are Caucasian—had been granted permission to work-from-home.

19. Manager Berg responded by stating, in substantial form, "that's different, they're different."

20. Bell told her supervisor, in substantial form: "It is true I am black, and that I have a son with special needs, but I know how to get my job done. Will I take care of my son? Yes, but I will also get my work done."

21. Despite Bell's assurance, Manager Berg again continued to deny her request.

22. Bell then said to Manager Berg, "you know this is wrong. This is discrimination."

23. Manager Berg immediately responded, in a cavalier attitude, verbatim: "so what are you going to do? File a complaint against me?"

24. Following Bell's request to work-from-home and Manager Berg's denial, Bell's ability to work a "flex" schedule was revoked. Prior to her protected activity, Bell had worked from 8 AM to 2 PM, then leave work to take her son to a specialist, and would then return to

work at 5 PM until 7 PM or so. However, now she could no longer "flex" and therefore was unable to obtain her regularly scheduled hours and its consequent hourly pay.

25. Following Bell's request to work-from-home and Manager Berg's denial, Bell experienced increased and unfavorable scrutiny by her supervisor and other officials employed by the City of Tulsa.

26. Following Bell's request to work-from-home and Manager Berg's denial, the City of Tulsa initiated an allegedly random, but actually retaliatory, review of Bell's health insurance policy, its dependents, and the paperwork supporting the policy. Bell and her family had been on the same insurance policy for five years, but all of a sudden the City of Tulsa decided to second-guess the validity of the policy and its supporting documents Bell had already provided.

27. In or around June, 24, 2020, Bell filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("**EEOC**").

28. Following Bell's request to work-from-home and Manager Berg's denial, and following Bell's filing of a Charge of Discrimination with the EEOC naming the City of Tulsa as a respondent, on or around December 3, 2020, the City of Tulsa—showing discrimination and retaliation—terminated Bell for bogus reasons.

29. The City of Tulsa terminated Bell *because* she was black, had a child with special needs, and stood up for her employment civil rights. For example, similarly-situated City of Tulsa employee Paula (last name unknown), a Caucasian Information Technology worker, was permitted to enter a work-from-home schedule, but Bell was not. Upon information and belief, Paula is not disabled nor is she associated with a child with special needs.

30. Bell's work product and business-savvy had not changed. The only issues were that she asked for what similarly-situated white coworkers had already received—a work-from-home schedule—and engaged in protected activity when her supervisor admitted to treating her differently *because of* her race and the association she had with her child with special needs.

31. Manager Berg's words and suggestions that a black woman—who has a child with special needs—cannot perform her work duties from home *because of* her blackness and *because of* her having a child with special needs is baseless, shocking, insulting, demeaning, tinged with sexism, and sounds like an idea from the 1950s *Jim Crow* era.

32. That Manager Berg admitted to Bell that he denied her request—a request CIO Michael called a "great idea"—because Caucasian coworkers are "different" and because Berg believes Bell will be distracted by her child with special needs is the quintessential definition of an adverse employment action.

33. Manager Berg's subsequent revocation of Bell's "flex" work schedule, his causing a health insurance audit, and Bell's eventual termination are all adverse employment actions, and adverse actions, that keep employees silent, and permit abuses to continue decades after the Civil Rights Act because nobody wants to be the sacrificial lamb, to lose the dignity she finds in her employment, and to have to fight for years in court for the possibility of justice. The City of Tulsa's treatment of Bell, if believed by the jury, merits a punitive damages instruction.

34. Manager Berg's smug comment of "what are you going to do? File a complaint against me?" is the exact type of contumacious disregard for federal law that merits a punitive

damages jury instruction and the exact type of statement that, once established and believed by the jury, will support a jury award of substantial punitive damages.

## FIRST CLAIM
(42 U.S.C. § 1981 -- Status-Based Race Discrimination)

35. Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

36. The City of Tulsa's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected federal rights.

37. In addition, the City of Tulsa retaliated against Bell, which is the worst form of discrimination, for having engaged in protected activity by, *inter alia*, terminating her.

38. As a direct and proximate result of the City of Tulsa's intentional and/or reckless actions, Plaintiff suffered a hostile work environment, disparate treatment, as well as having suffered humiliation, lost wages, lost bonuses, inconvenience, mental distress, embarrassment, and the incursion of attorneys' fees.

## SECOND CLAIM
(42 U.S.C. § 1981 – Retaliation)

39. All preceding paragraphs are incorporated by reference as if fully stated herein.

40. Bell opposed the City of Tulsa's unlawful, discriminatory employment practices and engaged in protected activity under federal law.

41. The City of Tulsa's retaliation would chill and deter a reasonable employee from reporting workplace discrimination and harassment because the City of Tulsa continued and increased its disparate and harassing behavior of Bell after her complaint of race-based discrimination, and then terminated Bell because of her advocacy for her rights.

42. Upon information and belief, the City of Tulsa's actions were done intentionally or with reckless indifference to Bell's statutorily protected federal rights, entitling her to punitive damages.

43. As a direct and proximate result of the City of Tulsa's intentional and/or reckless actions, Lane was forced to suffer disparate treatment and a hostile work environment, and suffered humiliation, lost wages, lost bonuses, inconvenience, mental distress, embarrassment, and the incursion of attorneys' fees.

## THIRD CLAIM
(Title VII – Status-Based Race Discrimination)

44. All preceding paragraphs are incorporated by reference as if fully stated herein.

## FOURTH CLAIM
(Title VII – Retaliation)

45. All preceding paragraphs are incorporated by reference as if fully stated herein.

## FIFTH CLAIM
(ADA Disability Association Discrimination)

46. All preceding paragraphs are incorporated by reference as if fully stated herein.

47. Bell's child suffers significant challenges that make him an individual the ADA intends to protect. Bell's association with her child with challenges was used as a justification to deny a work-from-home schedule request.

## SIXTH CLAIM
(ADA Retaliation)

48. All preceding paragraphs are incorporated by reference as if fully stated herein.

49. Bell engaged in ADA protected activity by advocating for her rights when her supervisor admitted he used her association with her child with challenges as a justification to deny her work-from-home schedule request, among other adverse employment action.

**WHEREFORE**, Plaintiff Bell *respectfully* demands judgment against the City of Tulsa, as follows:

A. On her First Claim, compensatory damages and punitive damages to the maximum extent permissible by law, presently undetermined but in excess of $400,000 dollars, plus attorneys' fees, interest, and costs;

B. On her Second Claim, compensatory damages and punitive damages to the maximum extent permissible by law, presently undetermined but in excess of $400,000 dollars, plus attorneys' fees, interest, and costs;

C. On her Third Claim, compensatory damages and punitive damages to the maximum extent permissible by law, presently undetermined but in excess of $300,000 dollars, plus attorneys' fees, interest, and costs;

D. On her Fourth Claim, compensatory damages and punitive damages to the maximum extent permissible by law, presently undetermined but in excess of $300,000 dollars, plus attorneys' fees, interest, and costs;

E. On her Fifth Claim, compensatory damages and punitive damages to the maximum extent permissible by law, presently undetermined but in excess of $300,000 dollars, plus attorneys' fees, interest, and costs;

F. On her Sixth Claim, compensatory damages and punitive damages to the maximum extent permissible by law, presently undetermined but in excess of $300,000 dollars, plus attorneys' fees, interest, and costs; and,

G. Such other and further relief as the Court deems just and proper under the circumstances.

JURY TRIAL RESPECTFULLY DEMANDED

ATTORNEY'S LIEN CLAIMED

**Dated: Tulsa, Oklahoma
       February 16, 2021**

                                                          **Respectfully submitted,**

/s/ Thomas H. Landrum
THE FIRM ON BALTIMORE, PLLC
1811 South Baltimore Ave.
Tulsa, Oklahoma 74119
T: 918.948.6171
F: 800.460.3446

-and-

Jeffrey D. Jones, *Esq*.
(Admission Application Pending)
**THE JONES LAW FIRM**
523 East Pine Place
Tulsa, OK 74106-4301
Phone: (574) 876-4715
JJ@JeffreyJonesLawFirm.com